FILED

FEB 22 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

## UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **18MJ0829**
One ZTE Z222 Cellular Phone )
Serial Number: 325352884315 )
)

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Southern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841, 846, 952, 960, & 963 | Distribution of a Controlled Substance, Conspiracy to Distribute a Controlled Substance, Importation of a Controlled Substance, Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See attached affidavit of Special Agent David W. Edasi

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

David W. Edasi, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/22/18

*Judge's signature*

City and state: San Diego, California       Jan M. Adler, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case Number: |
| **One ZTE Cell Phone** <br> **Model Number: Z222** <br> **S/N: 325352884315** <br> **IMEI: 869069020684143** | ) AFFIDAVIT OF SPECIAL <br> ) AGENT DAVID W. EDASI <br> ) IN SUPPORT OF SEARCH <br> ) WARRANT <br> ) |

## AFFIDAVIT

I, David W. Edasi, Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1.  I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents of the Department of Homeland Security, Homeland Security Investigations, for the following target property: one cellular telephone seized on November 27, 2017, from Jose Rosario LARA, at the San Ysidro, CA Port of Entry. The cellular telephone is as follows: (1) One ZTE Cell Phone, Model Number Z222, S/N: 325352884315, IMEI: 869069020684143 ("**Subject Telephone #1**").[1]

---

[1] See separate cover for an application for a search warrant regarding Subject Telephone #2.

1

2. **Subject Telephone #1** was seized from LARA when Customs and Border Protection Officers ("CBPOs") encountered LARA at the San Ysidro, California Port of Entry on November 27, 2017. LARA was the driver, sole occupant, and registered owner of gray Jeep Cherokee ("the vehicle"). Upon inspection of the vehicle, CBPOs discovered 38 packages of methamphetamine, totaling approximately 17.34 kilograms (38.1 pounds), concealed within the vehicle's rear seat. It is believed that **Subject Telephone #1** was used by LARA to communicate with co-conspirators during the drug smuggling event. Defendant has been charged with importation of a controlled substance (methamphetamine) in the Southern District of California. Probable cause exists to believe that **Subject Telephone #1** contain evidence relating to violations of Title 21, United States Code Sections 841, 846, 952, 960, and 963. **Subject Telephone #1** is currently in HSI possession at 880 Front Street, San Diego, CA 92101.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 841, 846, 952, 960, and 963; and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Subject Telephone #1**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

//

## EXPERIENCE AND TRAINING

4. I am a Special Agent ("SA") of the United States Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") and have been so employed since November, 2010. I am a graduate of a twenty-two week preparatory course at the Federal Law Enforcement Training Center prior to becoming an ICE SA. I have received training in investigating various narcotics-related offenses, including the importation of narcotics and narcotics trafficking. I have also had training in the methods used by controlled substance traffickers to import and distribute drugs and to operate detailed distribution networks. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics traffickers in the normal course of their illicit activities. Since becoming an ICE SA, I have been involved in multiple narcotics trafficking investigations involving the importation, distribution and sale of large quantities of controlled substances. I have also worked with other agents with extensive experience in narcotics smuggling investigations. Prior to becoming a SA with ICE, I worked as a U.S. Border Patrol Agent with U.S. Customs and Border Protection ("CBP") under the Department of Homeland Security in Lordsburg, NM for approximately four (4) years. Prior to working with the U.S. Border Patrol, I worked as an officer for CBP at John F. Kennedy International Airport for approximately six (6) months. I am currently assigned as a Computer Forensics Agent in the HSI San Diego Computer Forensics group.

5. From April 2011 until May 2016, I was assigned to Operation Alliance at San Ysidro, California, and as such, was cross-designated by the U.S. Drug Enforcement Administration ("DEA") to conduct narcotics investigations

3

and enforce the provisions of the Federal Controlled Substance Act, otherwise known as Title 21, of the United States Code. My assignment includes investigations related to the illegal importation and trafficking of narcotics. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations; I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have participated in the execution of search warrants; I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; I have interviewed defendants, witnesses, and informants relative to the illegal trafficking of controlled substances; and I am familiar with the identification of all types of controlled substances by sight and color. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico throughout the southwest border at designated ports of entry and between the ports of entry as well.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names,

photographs, text messaging, and phone numbers of co-conspirators.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e. Drug smugglers will use cellular telephones to direct drivers to

5

synchronize an exact drop off and/or pick up time of their illegal cargo.

    f.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

9.    Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

  10. On November 27, 2017, at approximately 5:30 pm, LARA applied for admission into the United States from Mexico at the San Ysidro, California Port-of-entry. LARA was the driver, sole occupant, and registered owner of a gray Jeep Cherokee. In primary inspection, Defendant told United States Customs and Border Protection Officers ("CBPOs") that he was going to Long Beach, and that he had nothing to declare. CBPOs searched the vehicle with a Human and Narcotics Detector Dog ("HNDD"). The HNDD alerted to the passenger side rear door seam of the vehicle. CBPOs continued the search and lifted the rear passenger seat, where they found a white package underneath the seat. LARA was sent to secondary inspection.

  11. In secondary inspection, CBPOs found 38 packages, which field-tested positive for methamphetamine. The packages weighed approximately 17.34 kilograms (38.1 pounds).

  12. LARA was arrested in violation of 21 U.S.C. § 952 & 960, Importation of Controlled Substances.

  13. **Subject Telephone #1** was found on LARA's person at the time of

his arrest.

14. Based upon my experience and investigation in this case, and others, I believe that LARA, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some other prohibited narcotics and to distribute those prohibited narcotics within the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin months or weeks before drugs are loaded in the car and includes coordination on crossing the border to "burn plates" (develop a crossing history or pattern). LARA's border crossing history indicates that he crossed in the Jeep Cherokee four times, beginning on October 9, 2017. I therefore believe **Subject Telephone #1** was likely used in furtherance of the importation conspiracy during this period. Given these facts, I respectfully request permission to search **Subject Telephone #1** for data beginning on October 1, 2017, up to and including November 27, 2017.

15. Based on my experience investigating narcotics smugglers, I also believe that LARA may have used **Subject Telephone #1** to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to

the narcotics smuggling activities of LARA and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like facebook, pictures and other digital information are stored in the memory of the cellular telephones described herein.

## SEARCH METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the

process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

20. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that LARA used **Subject Telephone #1** to facilitate the offense of importation of a controlled substance. **Subject Telephone #1** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of a crime, or property designed or intended for use, or which is or has been used as a means of committing criminal offenses of violations of Title 21, United States Code, Sections 841, 843, 952, 960, and 963.

21. I also believe that probable cause exists to believe that evidence of illegal activity committed by LARA continues to exist on **Subject Telephone #1**.

22. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be

searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

David W. Edasi
Special Agent, HSI

Subscribed and sworn to before me this 22nd day of February, 2018.

JAN M. ADLER
United States Magistrate Judge

11

## ATTACHMENT A-1

### PROPERTY/ITEMS TO BE SEARCHED

The items/property to be searched is described as:

**Subject Telephone #1**

> One (1) ZTE Cell Phone
> Model: Z222
> S/N: 325352884315
> IMEI: 869069020684143

Currently in the possession of the Seized Property Specialist, Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, 880 Front Street, San Diego, CA 92101.

# ATTACHMENT B-1
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of October 1, 2017 to November 27, 2017:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 841, 846, 952, 960, and 963.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.